**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:26-cv-20770-CMA**

CAPCOM CO., LTD.,

Plaintiff,

v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

Defendants.
_______________________________________/

**PLAINTIFF'S MOTION FOR ENTRY OF A**
**PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Capcom Co., Ltd. ("Plaintiff" or "Capcom") hereby moves this Court to convert the temporary restraining order issued in this matter into a preliminary injunction against the Partnerships and Unincorporated Associations Identified on Schedule "A" (collectively, the "Defendants") enjoining the manufacture, importation, distribution, offer for sale, and sale of infringing and counterfeit products, and a preliminary asset restraint, in an action arising out of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, 1114, 1116, 1121, and 1125(a); Copyright Act, 17 U.S.C. §§ 106 and 501 *et seq.*; and All Writs Act, 28 U.S.C. § 1651(a).

In support of this Motion, Capcom submits herewith a Memorandum of Law with a Table of Contents, excluded from the page limits pursuant to S.D. Fla. L.R. 7.1(c)(2).

# Table of Contents

**I. INTRODUCTION** ........ 1

**II. STATEMENT OF FACTS** ........ 1

a. Capcom's Intellectual Property and Genuine Products ........ 1

b. Procedural Background ........ 3

**III. ARGUMENT** ........ 4

a. Standard for Preliminary Injunction ........ 5

b. Capcom Is Likely to Succeed on the Merits ........ 6

*i. Capcom Will Likely Succeed on Its Trademark Infringement and Counterfeiting, and False Designation of Origin Claims* ........ 6

*ii. Capcom Will Likely Succeed on Its Copyright Infringement Claim* ........ 8

c. There Is No Adequate Remedy at Law, and Capcom Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction ........ 9

d. The Balancing of Harms Tips in Capcom's Favor, and the Public Interest Is Served by Entry of the Injunction ........ 11

**IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE** ........ 13

a. A Preliminary Injunction Continuing to Enjoin the Defendants' Unauthorized and Unlawful Use of the Capcom Trademarks and the Capcom Copyrighted Works is Appropriate ........ 13

b. Continuing to Prevent the Fraudulent Transfer of Assets is Appropriate ........ 14

**V. THE POSTED BOND IS SUFFICIENT TO SECURE THE INJUNCTIVE RELIEF** .. 16

**VI. CONCLUSION** ........ 17

# MEMORANDUM OF LAW

## I. INTRODUCTION

The same findings that led the Court to enter the Temporary Restraining Order ("TRO"), ECF No. [18], on April 3, 2026, warrant entry of a preliminary injunction that continues to prohibit Defendants' further use of Capcom's trademarks and/or copyrighted works pending a final determination on the merits. The Court entered the TRO against Defendants based on Capcom's evidence showing that each Defendant is knowingly and intentionally promoting, advertising, distributing, offering for sale, and/or selling goods bearing and/or using identical counterfeits and confusingly similar imitations of Capcom's trademarks and/or unauthorized copies of Capcom's copyrighted works (collectively, the "Unauthorized Products") through at least the fully interactive e-commerce stores operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases").

To continue to preserve the disgorgement remedy and all other equitable remedies available, Capcom requests that the Court convert the TRO into a preliminary injunction that continues to prohibit Defendants' sale of Unauthorized Products and the restraint of Defendants' assets.

## II. STATEMENT OF FACTS

### a. Capcom's Intellectual Property and Genuine Products

Capcom began in 1979 as an electronic game machine manufacturer and distributor. *See* ECF No. [12-3] ¶ 3. Capcom quickly built a reputation for introducing cutting-edge technology and software to the video game market. *Id.* Now an industry leader in the video game industry, Capcom's legacy of historic franchises in home and arcade gaming is a testament to an unparalleled commitment to excellence. *Id.* Capcom created groundbreaking franchises like Resident Evil,

Monster Hunter, Devil May Cry, Ace Attorney, Mega Man, and the subject of this action, Street Fighter. *Id.*

*Street Fighter*, first released in 1987, is a genre-defining fighting video game that has the player character fight other player-controlled characters to see who comes out on top. *Id.* ¶ 4. Summarized in one phrase, "There's Always Someone Stronger". *Id.* The *Street Fighter* series and its history is built upon glorious victories and stunning defeats of its characters and players. *Id.* A main staple in the eSports community, *Street Fighter* is one of the biggest titles in the fighting game community. *Id.*

Street Fighter is one of Capcom's most popular franchises. *Id.* ¶ 5. Since the release of the original *Street Fighter* video game, Capcom has produced over forty sequels, remasters, expansions, spinoffs, and/or crossover games, eight animated television series, movies, and/or shorts, and five live adaptation movies and/or shows, with more games, movies, and series currently in production. *Id.* Furthermore, the Street Fighter franchise is a popular reference in popular culture. *Id.* For example, it is referenced in movies such as *Wreck-It Ralph*, *Ready Player One*, and *Shrek 2,* in music such as "I Bet You Look Good on the Dancefloor" by Arctic Monkeys, and in television shows such as *Family Guy*, *Regular Show, Black Mirror,* and *Fresh Off the Boat*. *Id.* The *Street Fighter* games have sold over 50 million units worldwide. *Id.* Capcom has also registered a multitude of works related to the Street Fighter works and the characters embodied therein with the United States Copyright Office (the "Capcom Copyrighted Works"). *Id.* ¶ 6. Since first publication, the Capcom Copyrighted Works have been used on Capcom Products and are featured on Capcom's official websites. *Id.* ¶ 7.

Capcom markets and sells a variety of Street Fighter branded products, including clothing, pins, snacks, plushies, figurines, toys, and video games (collectively, "Capcom Products"). *Id.* ¶

8. Capcom Products have become enormously popular and even iconic, driven by Capcom's quality standards and innovative designs. *Id.* ¶ 9. Among the purchasing public, Capcom Products are instantly recognizable as such. *Id.* The Street Fighter brand has become a global success and Capcom Products are among the most recognizable in the world. *Id.* Capcom Products are distributed and sold to consumers through Capcom's official Street Fighter merchandise website and authorized licensees. *Id.*

Capcom has also used the STREET FIGHTER trademarks, and other trademarks, for many years and has continuously sold products under its trademarks (collectively, the "Capcom Trademarks"). *Id.* ¶ 10. The Capcom Trademarks are registered with the United States Patent and Trademark Office. *Id.* ¶ 11. The Capcom Trademarks are valid, subsisting, in full force and effect. The Capcom Trademarks are distinctive when applied to Capcom Products, signifying to the purchaser that the products come from Capcom and are manufactured to Capcom's quality standards. *Id.* ¶ 12. The Capcom Trademarks constitute *prima facie* evidence of their validity and of Capcom's exclusive right to use the Capcom Trademarks pursuant to 15 U.S.C. § 1057(b). The Capcom Trademarks are also famous marks, as that term is used in 15 U.S.C. § 1125(c)(1). *Id.* ¶ 13.

b. <u>Procedural Background</u>

On February 5, 2026, Capcom filed its Complaint. ECF No. [1]. On April 1, 2026, Capcom filed its Renewed *Ex Parte* Motion for Entry of a Temporary Restraining Order and other relief ("TRO Motion"). On April 3, 2026, this Court issued the TRO and temporarily restrained Defendants from selling Unauthorized Products and directed third parties providing services to Defendants to identify and restrain funds in payment accounts associated with Defendants. *See* ECF No. [18].

Pursuant to the TRO, Capcom posted its required bond. ECF No. [22]. Further, Capcom is concurrently serving Defendants with a copy of the Complaint, Capcom's Motion, and the TRO via e-mail to each Defendant's e-mail address(es) and by posting copies of the same, as well as all other pleadings and documents on file in this action, on the website located at <https://www.tme-law.com/case/26-cv-20770>. Capcom now moves the Court to convert the TRO into a preliminary injunction against Defendants and requests a hearing on the requested injunctive relief pursuant to Local Rule 7.1(b)(2) and Fed. R. Civ. P. 65(b)(3).

## III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Capcom's reputation and the goodwill symbolized by the Capcom Trademarks and Capcom Copyrighted Works. The entry of a preliminary injunction is appropriate because it would continue to prevent the Defendants from benefiting from the sale of Unauthorized Products.

In the absence of a preliminary injunction, the Defendants can and likely will register new e-commerce stores under new aliases and move any assets to offshore bank accounts outside the jurisdiction of this Court. *See* ECF No. [12-1] ¶¶ 2–5. As such, Capcom respectfully requests that this Court issue the requested preliminary injunction.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*; the Copyright Act, 17 U.S.C. § 501 *et seq.*; 28 U.S.C. §§ 1338(a)–(b); and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target their business activities at consumers in the United States, including Florida, through

at least the fully interactive e-commerce stores operating under the Seller Aliases. Specifically, Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Florida, accept payment in U.S. dollars, and, on information and belief, sell Unauthorized Products to residents of Florida. *See* ECF No. [1] §§ 3, 26, 34-35; *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352-58 (11th Cir. 2013); *see also NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 624-27 (7th Cir. 2022); *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276-78 (2d Cir. 2024). As such, each Defendant is committing tortious acts in Florida, is engaging in interstate commerce, and has wrongfully caused Capcom substantial injury in Florida.

a. Standard for Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See Emerging Vision, Inc. v. Glachman*, 10-80734-CIV, 2010 WL 3293346, at n. 3 (S.D. Fla. June 29, 2010), report and recommendation adopted, 10-80734-CIV, 2010 WL 3293351 (S.D. Fla. Aug. 11, 2010). A court will issue a preliminary injunction where the moving party demonstrates the following four factors: (1) it has a substantial likelihood of success on the merits; (2) the moving party will suffer irreparable injury if the order is not granted; (3) the threatened injury to the plaintiff outweighs the harm the relief would inflict on the non-movant; and (4) entry of the order would serve the public interest. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *Shenzhen Dejiayun Network Tech. Co. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 22-CV-22363, 2023 WL 5965606, at *9 (S.D. Fla. 2023) (applying the above four-factor test in granting a TRO in a Lanham Act case).

b. Capcom Is Likely to Succeed on the Merits

*i. Capcom Will Likely Succeed on Its Trademark Infringement and Counterfeiting, and False Designation of Origin Claims*

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). "In a trademark infringement action, the plaintiff must show, first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to cause confusion." *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322 (11th Cir. 1989).

The Capcom Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office. ECF No. [12-3] ¶¶ 11-12. The Capcom Trademarks have been continuously used and never abandoned. *Id.* ¶ 13. The registrations for the Capcom Trademarks constitute *prima facie* evidence of their validity and of Capcom's exclusive right to use the Capcom Trademarks pursuant to § 1057(b). Furthermore, Capcom has not licensed or authorized Defendants to use any of the Capcom Trademarks, and none of the Defendants are authorized retailers of Capcom Products. *Id.* ¶ 20. Thus, Capcom satisfies the first element of its Lanham Act claim.

In cases involving the use of counterfeit marks, the Court can presume a likelihood of confusion. *See Am. Airlines, Inc. v. Spada*, No. 23-21844-CIV, 2024 WL 4472016, at *9 (S.D. Fla. 2024) (citing *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1359 (S.D. Fla. 2017) ("[A]pplication of the factors is unnecessary where use of … a counterfeit mark … is at issue[.] This is because such a mark is inherently confusing, thus consumer confusion is presumed in such cases.")) (internal quotations omitted); *see also Dive N' Surf, Inc. v.*

*Anselowitz*, 834 F. Supp. 379, 382 (M.D. Fla. 1993) (citing *Polo Fashions v. Croftex, Inc.*, 816 F.2d 145, 148 (4th Cir.1987) ("Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion."). Accordingly, the Court can presume a likelihood of confusion from certain Defendants' use of the Capcom Trademarks.

The result is the same when considered in light of the Eleventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) the strength of the allegedly infringed mark; (2) the similarity of the infringed and infringing marks; (3) the similarity of the goods and services the marks represent; (4) the similarity of the parties' trade channels and customers; (5) the similarity of advertising media used by the parties; (6) the intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public. *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 947 (11th Cir. 2023).

Capcom has submitted extensive evidence showing that certain Defendants are selling Unauthorized Products that look similar to Capcom Products and use infringing and counterfeit marks identical to the Capcom Trademarks. ECF Nos. [12-6]-[12-9]. Those Defendants sell products using the Capcom Trademarks to the same consumers that Capcom targets. ECF No. [12-3] ¶¶ 9, 19. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing Capcom Products from Unauthorized Products. The same Defendants are intentionally trying to induce consumers to purchase Unauthorized Products by advertising Unauthorized Products using the Capcom Trademarks and/or by copying the Capcom Copyrighted Works. *Id.* ¶ 21. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are

attempting to "palm off" their goods as Capcom Products. *See E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1529 (11th Cir. 1985); *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Capcom is likely to establish a prima facie case of trademark infringement and counterfeiting, and false designation of origin.

*ii. Capcom Will Likely Succeed on its Copyright Infringement Claim*

The United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer of the copyright." 17 U.S.C. § 501. Among these exclusive rights granted to Capcom under the Copyright Act is the exclusive right to reproduce, prepare derivative works of, distribute copies of, and display the Capcom Copyrighted Works to the public. 17 U.S.C. § 106.

To establish a claim for copyright infringement, a plaintiff must show: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *See Roberts v. Gordy*, 877 F.3d 1024, 1028 (11th Cir. 2017); *Pk Studios, Inc. v. R.L.R. Invs., LLC*, No. 2:15-CV-389-FTM-99CM, 2016 WL 4529323, at *2 (S.D. Fla. 2016). Copying can be shown through direct evidence, or it can be inferred where a defendant had access to the copyrighted work and the accused work is substantially similar. *See Munro v. Fairchild Tropical Botanic Garden, Inc.*, No. 20-20079-CIV, 2022 WL 452257, at *7 (S.D. Fla. 2022). Substantial similarity exists where "an average lay observer would recognize the alleged copy as having been appropriated from the original work." *Id.* (internal citations omitted).

With respect to the first element, Capcom is the owner of the Capcom Copyrighted Works, including the distinctive characters embodied therein. *See Dubay v. King*, 366 F. Supp. 3d 1330, 1337 (M.D. Fla. 2019) (holding copyright law protects characters separately from the work if "distinctively delineated" through "consistent, widely identifiable traits") (citing *Rice v. Fox*

*Broad. Co.*, 330 F.3d 1170 (9th Cir. 2003); *Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co.*, 900 F. Supp. 1287, 1295-97 (C.D. Cal. 1995) (James Bond protectable apart from the works in which he appeared); *D.C. Comics Inc. v. Unlimited Monkey Bus., Inc.*, 598 F.Supp. 110 (N.D. Ga. 1984) (Superman and Wonder Woman protected by copyright); and *Disney Prods. v. Air Pirates*, 581 F.2d 751 (9th Cir. 1978) (Mickey Mouse and other Disney characters protected by copyright)); *see also SunTrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1272–73 (11th Cir. 2001) (recognizing that as plots become more detailed and characters more idiosyncratic (i.e., sufficiently distinctive and delineated), they may qualify for copyright protection) (quoting 1 Nimmer § 2.12 (2001)); *Penguin Random House LLC v. Colting*, 270 F. Supp. 3d 736, 746 (S.D.N.Y. 2017) ("copyright law *does* protect characters who are sufficiently delineated to be original") (citing *Gaiman v. McFarlane*, 360 F.3d 644, 660 (7th Cir. 2004) ("[n]o more is required for a character copyright")).

Regarding the second element, certain Defendants are willfully and deliberately reproducing the Capcom Copyrighted Works in their entirety and are willfully and deliberately distributing copies of the Capcom Copyrighted Works to the public by sale. Those Defendants' unauthorized copies are identical or substantially similar to the Capcom Copyrighted Works. As this type of copying directly infringes Capcom's rights under 17 U.S.C. § 106, Capcom has proved it has a reasonable likelihood of success on the merits for its copyright infringement claim.

c. <u>There Is No Adequate Remedy at Law, and Capcom Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction</u>

Because Capcom has shown a likelihood of success on the merits of its trademark infringement claim, Capcom is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). The Eleventh Circuit has held that even without the presumption of irreparable harm, Capcom can satisfy this factor. Grounds for irreparable injury include loss of control of reputation,

loss of trade, and loss of goodwill. *Ferrellgas Partners, L.P. v. Barrow*, 143 Fed. Appx. 180, 190 (11th Cir. 2005). Evidence that Defendants sell lines of infringing products intended to capitalize on Capcom's goodwill constitutes "overwhelming evidence" that the plaintiff is likely to suffer irreparable harm. *Cathedral Art Metal Co. v. Divinity Boutique, LLC*, No. 1:18-CV-141-WSD, 2018 WL 2356181, at *2 (N.D. Ga. 2018). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Crossfit, Inc. v. Quinnie*, 232 F. Supp.3d 1295, 1316 (N.D. Ga. 2017). Likewise, in copyright cases, the Eleventh Circuit has held that "irreparable harm may be presumed in cases involving simple copyright violations where fair use is not raised as a defense." *See C. B. Fleet Co. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1083 (S.D. Fla. 2007) (citing *Suntrust Bank v. Houghton Mifflin Company*, 268 F.3d 1257, 1265 (11th Cir. 2001)); *but see Campbell v. Bennett*, 47 F.4th 1362, 1368 (11th Cir. 2022). Even if not presumed in this case, Capcom has shown it is irreparably harmed through loss of market share, and harm to reputation, goodwill, and integrity of the Capcom Copyrighted Works as a result of Defendants' actions. *See* ECF No. [12-3] ¶¶ 28-32; *see C. B. Fleet Co.¸* 510 F. Supp. 2d at 1083. As such, monetary damages are inadequate compensation for such harm.

Defendants' unauthorized use of the Capcom Trademarks and/or Capcom Copyrighted Works has and continues to irreparably harm Capcom through diminished goodwill and brand confidence, damage to Capcom's reputation, loss of exclusivity, and loss of future sales. *See* ECF No. [12-3] ¶¶ 28–32. The extent of the harm to Capcom's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Chanel, Inc. v. chanel255.org*, No. 12-21762-CIV, 2012 WL 12845630, at *5 (S.D. Fla. 2012)

("The operation of Defendants' websites displaying the Chanel Marks and the sale of Defendant's inferior goods to consumers is likely to cause irreparable damage to Chanel's reputation … [t]his damage to Chanel's reputation and goodwill could not be easily quantified nor could it be undone through an award of money damages.")

For the reasons stated above, Capcom will suffer immediate and irreparable injury, loss, or damage if a preliminary injunction is not issued. *See* ECF No. [12-3] ¶ 33. Since Defendants are individuals or businesses who reside in China or other foreign jurisdictions with no U.S. presence, Capcom is likely to be irreparably deprived of its equitable profits remedy without an injunction. *See Kay v. Individual Defendants, Partnerships, & Unincorporated Associations*, No. 22-CV-3033-RJD, 2023 WL 4350645, at *2 (S.D. Ill. 2023).

d. <u>The Balancing of Harms Tips in Capcom's Favor, and the Public Interest Is Served by Entry of the Injunction</u>

As willful infringers, the Defendants infringing the Capcom Trademarks are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.*, 929 F. Supp. 473, 478 (D.D.C. 1996).

Additionally, as willful copyright infringers, the Defendants infringing the Capcom Copyrighted Works are entitled to little equitable consideration. *See My-T Fine Corporation v.*

*Samuels*, 69 F.2d 76, 78 (2nd Cir. 1934). There is also a genuine public interest in upholding copyright protections. *See Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1066 (7th Cir. 1994) (quoting *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) ("[i]t is virtually axiomatic that the public interest can only be served by upholding copyright protections…").

Moreover, as Capcom has demonstrated, Defendants have been profiting from the sale of Unauthorized Products. Infringers like Defendants embrace similar marketing strategies to Capcom and are concurrently leveraging it to cause greater and more significant harm to Capcom. Defendants engage in precisely the same illegal activity for the same purpose over the same time span, which in turn causes Capcom irreparable harm in a way that such individual actions occurring alone might be inadequately reflective of the harm caused by such a concerted illegal and illicit business scheme. *See*, *e.g.*, *Bose Corp. v. P'ships*, 334 F.R.D. 511, 517 (N.D. Ill. 2020) ("[Plaintiff] does not perceive any one [infringer] to be the problem. Each injury by itself is relatively inconsequential to [Plaintiff]. Rather, it is the injuries in the aggregate . . . that is harmful and from which [Plaintiff] seeks shelter."). Defendants are jointly and concertedly harming Capcom's marketing efforts on the Internet by blocking and consistently increasing the cost of online visibility for Capcom's legitimate, authorized e-commerce website. Moreover, the combination of Defendants' unlawful activities increases Capcom's cost to market its genuine goods and educate consumers about its brand. *Id*. at 517 ("[Seeking relief against each member of the swarm one by one defies common sense, because it is the swarm—the fact that all Defendants are attacking at once—that is the defining aspect of the harm from which [Plaintiff] seeks relief.").

As Capcom has demonstrated, Defendants have been profiting from the sale of Unauthorized Products. Thus, the balance of equities tips decisively in Capcom's favor. Moreover,

"the public interest is served by preventing consumer confusion in the marketplace." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001). The public is currently under the false impression that Defendants are operating their e-commerce stores with Capcom's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief Capcom seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …" 15 U.S.C. § 1116(a). The Copyright Act also authorizes courts to issue injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).

### a. <u>A Preliminary Injunction Continuing to Enjoin the Defendants' Unauthorized and Unlawful Use of the Capcom Trademarks and the Capcom Copyrighted Works Is Appropriate</u>

Capcom requests a preliminary injunction continuing the relief afforded in the TRO, namely requiring Defendants to continue their cessation of all use of the Capcom Trademarks or substantially similar marks, and/or copying and distribution of the Capcom Copyrighted Works on or in connection with all e-commerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to the Street Fighter brand and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Capcom Trademarks and/or copying and distribution of the Capcom Copyrighted Works. Courts in this district have regularly authorized injunctive relief in similar cases involving the unauthorized use of intellectual property. *Liangsword Ltd. v. Partnerships,*

*Unincorporated Associations Identified on Schedule A*, No. 24-60618-CIV, 2024 WL 3547092, at *2–3 (S.D. Fla. 2024), vacated in part, No. 24-60618-CIV, 2024 WL 4483282 (S.D. Fla. 2024). (after issuing a TRO, the Court granted a motion for entry of preliminary relief, concluding as a matter of law that Plaintiff has a strong probability to succeed in showing Defendants' e-commerce stores sell counterfeit and infringing goods.); *Chanel, Inc. v. Individuals, Bus. Entities, & Unincorporated Associations Identified on Schedule "A"*, No. 1:24-CV-20079, 2024 WL 1657266, at *2–3 (S.D. Fla. 2024) (same.); *Tesla, Inc. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A,"*, No. 24-21263-CIV, 2024 WL 3538081, at *2–4 (S.D. Fla. 2024) (same).

b. <u>Continuing to Prevent the Fraudulent Transfer of Assets Is Appropriate</u>

Capcom requests a continued restraint of Defendants' assets so Capcom's right to an equitable accounting of Defendants' profits from Unauthorized Product sales is not impaired. Keeping Defendants' funds restrained will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Generally, e-commerce store operators can easily remove all evidence of their infringing goods from their virtual storefronts and transfer any ill-gotten funds into foreign bank accounts, where they are beyond this Court's reach. *F.T.C. v. Atlantex Assocs.*, 872 F.2d 966, 968-70 (11th Cir. 1989) (affirming *ex parte* TRO and asset freeze order against party accused of deceptive trade practices to preserve funds for possible restitution). Specifically, upon information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Capcom meaningless.

Orders freezing Defendants' assets are warranted to assure the availability of permanent relief. *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987-88 (11th Cir. 1995).

Such asset freezes are particularly appropriate against sellers of infringing goods who are likely to hide their ill-gotten profits if their assets are not seized. *Louis Vuitton Malletier v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"*, 2024 WL 670472, at *5 (S.D. Fla. 2024) ("In light of the inherently deceptive nature of the counterfeiting business and the likelihood that Defendant has violated federal trademark laws, the Court has good reason to believe Defendant will hide or transfer its ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained"); *Reebok Intern., Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). A court can issue an asset freeze when its equitable authority is invoked. "[T]he Court unquestionably has authority to freeze assets to preserve an equitable accounting of profits, a remedy provided to counterfeiting victims by 15 U.S.C. § 1117(a)." *Louis Vuitton Malletier v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"*, 2023 WL 9472159, at *3 (S.D. Fla. 2023) (quoting *Levi Strauss & Co.*, 51 F.3d at 987).

As Capcom seeks a permanent injunction, an accounting of the Defendants' profits pursuant to the Lanham Act and Copyright Act, and an award of its attorneys' fees, Capcom has thereby invoked this Court's equitable authority. *Levi Strauss & Co.*, 51 F.3d at 987.

Capcom has also shown a strong likelihood of succeeding on the merits of its trademark infringement, counterfeiting, and copyright infringement claims. Capcom's Complaint seeks, among other relief, that Defendants account for and pay to Capcom all profits realized by Defendants by reason of Defendants' unlawful acts. According to 15 U.S.C. § 1117(a)(1), Capcom is entitled, "subject to the principles of equity, to recover … defendant's profits." An equitable accounting of profits under the Lanham Act furthers the congressional purpose by making infringement unprofitable and is justified because it deprives defendants of unjust enrichment and

provides a deterrent to similar activities in the future. *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988). Additionally, under 17 U.S.C. § 504(b) and 17 U.S.C. § 502(a), Capcom may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing unauthorized copies of the Capcom Copyrighted Work. *See Antsy Labs, LLC v. Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A to Complaint*, 2024 WL 4472009, at *2 (S.D. Fla. 2024) ("Under 17 U.S. Code § 504(b) and 17 U.S. Code § 502(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods infringing Plaintiff's Copyrights."). Thus, the Court has the inherent equitable authority to grant Capcom's request for a prejudgment asset freeze. Capcom has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore accounts. Accordingly, the asset restraint continues to be proper.

## V. THE POSTED BOND IS SUFFICIENT TO SECURE THE INJUNCTIVE RELIEF

Federal Rule of Civil Procedure 65(c) requires that a movant for temporary injunctive relief provides security "in an amount that the court considers proper" to offset the potential effects of a wrongfully issued injunction. Fed. R. Civ. P. 65(c). In this Circuit, it is well established that the district court has discretion over the security amount and may require none at all. *BellSouth Telecom., Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 970-71 (11th Cir. 2005). Because of the strong and unequivocal nature of Capcom's evidence of counterfeiting, trademark infringement, copyright infringement, and false designation of origin, Capcom

respectfully requests this Court to require Capcom to maintain its previously posted bond in the amount of ten thousand dollars ($10,000).

## VI. CONCLUSION

Defendants' unlawful operations are irreparably harming Capcom's business, its Street Fighter brand, and United States and Florida consumers. In view of the foregoing and consistent with previous similar cases, Capcom respectfully requests that this Court enter a Preliminary Injunction in the form submitted herewith.

Dated this 24th day of April 2026.

Respectfully submitted,

*/s/* Laura M. Reich
Laura M. Reich
Fla. Bar No. 22792
Clarissa A. Rodriguez
Fla. Bar No. 38175
HARPER MEYER LLP
201 S. Biscayne Blvd., Suite 800
Miami, FL 33131
Telephone: (305) 577-3443
Facsimile: (305) 577-9921
lreich@harpermeyer.com
crodriguez@harpermeyer.com

*Counsel for Plaintiff Capcom Co., Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of April 2026, I, or someone at my direction, will electronically file the foregoing with the Clerk of the Court using the CM/ECF system and I, or someone at my direction, will electronically publish the documents on a website and send an email to the email addresses identified in Exhibit A hereto that includes a link to said website.

*/s/* Laura M. Reich
Laura M. Reich
Fla. Bar No. 22792
Clarissa A. Rodriguez
Fla. Bar No. 38175
HARPER MEYER LLP
201 S. Biscayne Blvd., Suite 800
Miami, FL 33131
Telephone: (305) 577-3443
Facsimile: (305) 577-9921
lreich@harpermeyer.com
crodriguez@harpermeyer.com

*Counsel for Plaintiff Capcom Co., Ltd.*